UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTINE E. LEX,                    :
                                     :CIVIL ACTION NO. 3:17-CV-2204
        Plaintiff,                   :
                                     :(JUDGE CONABOY)
        v.                           :
                                     :
NANCY A. BERRYHILL,                  :
Acting Commissioner of               :
Social Security,                     :
                                     :
        Defendant.                   :
                                     :

_____

## MEMORANDUM

Pending before the Court is Plaintiff's appeal from the Acting Commissioner's denial of Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). (Doc. 1.) Plaintiff protectively filed her application on October 5, 2012. (R. 42.) She initially alleged disability beginning on January 1, 1992, and later amended the onset date to October 1, 2012. (Id.) After Plaintiff appealed the initial June 13, 2013, denial of the claim, a hearing was held by Administrative Law Judge ("ALJ") John J. Porter on March 9, 2015. (Id.) ALJ Porter issued his Decision on April 24, 2015, concluding that Plaintiff had not been under a disability, as defined in the Social Security Act ("Act"), from January 1, 1992, through the date of the decision. (R. 60.) Plaintiff requested review of the ALJ's decision which the Appeals

Council denied on September 29, 2017. (R. 1-7.) In doing so, the ALJ's decision became the decision of the Acting Commissioner. (R. 1.)

Plaintiff filed this action on December 1, 2017. (Doc. 1.) She asserts in her supporting brief that the Acting Commissioner's determination should be reversed or remanded for the following reasons: 1) the ALJ erred in rejecting the opinions of the treating psychiatrist and treating physician; 2) the ALJ erred in assigning little weight to the assessment of the consultative psychologist; and 3) the ALJ did not present a hypothetical question containing all of Plaintiff's credibly established limitations. (Doc. 13 at 3.) For the reasons discussed below, the Court concludes Plaintiff's appeal is properly granted.

## I. Background

Plaintiff was born on March 8, 1964, and was forty-eight years old on the amended alleged disability onset date. (R. 59.) Plaintiff did not graduate from high school and was considered to have a limited education. (R. 59, 85.) She has no past relevant work because her jobs over the past fifteen years did not produce earnings reflective of substantial gainful activity. (*Id.* (citing SSR 82-62).) An undated Disability Report indicates Plaintiff alleged that her ability to work was limited by ADD, dementia,

2

PTSD, bipolar disorder, fibromyalgia, severe depression, and chronic fatigue. (R. 266.)

The parties present relevant evidence in the context of the arguments related to Plaintiff's claimed errors. (Doc. 13 at 4-12; Doc. 14 at 6-15; Doc. 17 at 3-10.) Because Plaintiff's errors relate primarily to mental impairment opinion evidence, the Court will provide a summary of opinions of record and relevant hearing testimony.

## A.   *Mental Impairment Opinion Evidence*

### 1.   Consulting Psychologist

Stanley E. Schneider, Ed.D., conducted a Clinical Psychological Disability Evaluation and completed a Medical Source Statement of Ability to Do Work-related Activities (Mental) on May 22, 2013. (R. 472-79.) In the Comments and Observations portion of the report, Dr. Schneider indicated Plaintiff was initially "very anxious, nervous, apprehensive, and agitated, but as the assessment progressed she settled down" although she continued to be anxious. (R. 473.) He noted that Plaintiff was unsure of the date and her driver's license had expired. (R. 473.) Plaintiff reported she completed eleventh grade and tried to get her GED four times but was not successful. (R. 475.) She also reported that her adoptive mother was "incredibly abusive" and she was raped by

her stepfather. (*Id.*) Plaintiff said she was emancipated at age sixteen which resulted in her being homeless and living in shelters. (*Id.*)

Dr. Schneider noted Plaintiff maintained eye contact after she settled down but her ongoing anxiety was evidenced by nervous laughter and wringing her hands under the table. (R. 476-77.) He found Plaintiff was cooperative and pleasant; her stream of thought reflected a fast rate; regarding speech, volume and articulation were acceptable; her attention and concentration were poor; test judgment was fair; and insight was acceptable. (R. 477-78.) Dr. Schneider diagnosed bipolar disorder, mixed type, PTSD, sexual abuse survivor, and rule out major depressive disorder and learning disability. (R. 478-79.) He opined that Plaintiff's prognosis was guarded to poor and she had "an urgency to get better, but currently is not receiving enough treatment or support." (R. 479.)

The Medical Source Statement findings include the following assessments of Plaintiff's ability to understand, remember and carry out instructions: Plaintiff had moderate limitations in her abilities to understand and remember simple instructions; moderate limitations in her ability to carry out simple instructions; moderate limitations in her ability to make judgments on simple work-related decisions; marked limitations in her ability to make

judgments on complex work-related decisions; marked to extreme limitations in her ability to understand and remember complex instructions; and marked to extreme limitations in her ability to carry out complex instructions. (R. 481.) The identified supporting factors are not legible. (*See id.*) Regarding interaction with others, Dr. Schneider opined that Plaintiff had a mild restriction in interacting appropriately with the public; moderate restrictions in interacting appropriately with supervisors and coworkers; and marked restrictions in responding appropriately to usual work situations and to changes in a routine work setting. (R. 482.) These limitations were based on the assessment that Plaintiff loses focus and concentration. (*Id.*)

## 2. State Agency Consulting Psychologist

In his June 7, 2013, assessment, State agency consulting psychologist Henry Weeks, Ph.D., concluded that Plaintiff's mental impairments caused mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation. (R. 125.) Dr. Weeks found that Plaintiff had moderate limitations in her ability to understand and remember detailed instructions; moderate limitations in her ability to carry out detailed instructions; and moderate

5

limitations in her ability to accept instructions and respond appropriately to criticism from supervisors. (R. 127-28.)

## 3. **Primary Care Physician**

Deanne S. Endy, D.O., Plaintiff's primary care physician, completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) on April 4, 2014.[1] (R. 588-90.) Dr. Endy opined that Plaintiff had marked limitations in all categories related to abilities to understand, remember, and carry out instructions except that she had extreme limitations in her ability to understand and remember detailed instructions. (R. 588.) Regarding her ability to respond appropriately in a work setting, Dr. Endy found that Plaintiff had marked limitations in all categories except that she had a moderate limitation in her ability to interact appropriately with the public. (R. 589.) Dr. Endy based the assessments on psychiatric evaluation and past work history. (*Id.*) She noted that Plaintiff was "always fired or quits for inability to control temper or frustrated or can't do job - mentally." (*Id.*) Dr. Endy added that all relationships were affected by Plaintiff's impairments and she had stayed in the house

---

[1] In his decision, ALJ Porter uses both male and female pronouns in referring to Dr. Endy. (*See* R. 53, 58.) Online information indicates Dr. Endy is a female. *See* https://healthcare6.com/physician/harrisburg-pa/deanee-s-endy-647531.

for six years. (R. 589.) She identified the clinical findings supporting the assessment to be bipolar depression, ADD, PTSD, and anxiety. (*Id.*) Regarding managing benefits, Dr. Endy commented that Plaintiff had no money, and her son works, pays all bills, and cares for his brother and sister. (R. 590.)

## 4. Treating Psychiatrist

Jagadeesh K. Moola, M.D., of Diakon Family Life Services ("Diakon") conducted a psychiatric evaluation on August 6, 2014. (R. 489-91.) Dr. Moola noted Plaintiff was accompanied by a psychiatric home nurse who was included in the session. (R. 489.) The reasons for the referral were severe anxiety, depression, anger, and concentration problems. (*Id.*) The "History of Present Illness" portion of the evaluation was gathered from Plaintiff, her psychiatric home nurse, and by reviewing notes from Plaintiff's therapist. (*Id.*) A history of mood swings, depression, manic symptoms, and suicide attempts by overdose were reported. (*Id.*) Dr. Moola recorded that mood fluctuations occurred on a daily basis and anger episodes included yelling, screaming, and kicking and throwing things. (*Id.*) Chronic problems with concentration and attention span were also reported as were significant anxiety symptoms, panic attacks, and fear of leaving her house. (*Id.*) Incidents of physical and sexual abuse were described and Plaintiff

7

reported many other traumatic events in her life. (*Id.*) Dr. Moola noted Plaintiff became very anxious, depressed, and tearful when discussing the abuse and traumatic events and she did not want to elaborate. (*Id.*) Finally, he reported that Plaintiff continued to struggle with difficulty being around people. (*Id.*)

In his Mental Status Examination, Dr. Moola found Plaintiff had fair hygiene and grooming; her behavior was controlled; her mood was moderately anxious and depressed with frequent tearful episodes; she made minimal eye contact; she spoke in a low tone of voice but was goal directed; and she expressed feelings of hopelessness but denied current suicidal thoughts, hallucinations, or overt delusions. (R. 491.) Dr. Moola noted Plaintiff's insight and judgment were fair and she was oriented to time, place, and person. (*Id.*) He stated "no memory deficits are noted." (*Id.*) He diagnosed bipolar I disorder, mixed type, panic disorder with agoraphobia, PTSD, and ADHD. (*Id.*) He assessed a GAF score of 45 at the time of the evaluation and the same for the past year. (*Id.*)

Dr. Moola decided to change Plaintiff's medication regimen. (*Id.*) He noted Plaintiff would continue individual psychotherapy with Ashley (her Diakon therapist) and he would see her again in four weeks. (*Id.*) He also opined that Plaintiff's prognosis was

guarded.  (*Id.*)

## B. Hearing Testimony

At the March 9, 2015, hearing, Plaintiff testified that she had improved with increased treatment since 2012 but she still had "a long way to go."  (R. 86.)  When ALJ Porter asked about her ability to perform exemplary jobs, she said her biggest problem would be leaving her house to get to the job but anxiety and frustration doing the jobs would also be factors.  (R. 87-88, 89-90.)  When asked about how often she left the house in the past two years, Plaintiff testified she went out on Wednesdays to go to therapy and psych appointments, on the same day she walked to pick her daughter up at a church program, she went to the grocery store once a month with her son, she sometimes walked to pick up her medication but had also put that off for days, and she went to a "native gathering" for an hour the previous summer but had to leave because it was overwhelming.  (R. 88-89.)

ALJ Porter questioned Plaintiff about treatment and medication compliance.  (R. 91.)  Plaintiff said she had been more compliant with the help of her mobile nurse and a medication box.  (*Id.*)  ALJ Porter asked her about this again later in the hearing and cited a treatment provider's notation that Plaintiff was not taking her medications consistently.  (R. 105 (citing Ex. 12 at 16 [R. 521]).)

When asked if her therapist was wrong, Plaintiff responded "[i]n the beginning I was not, I am now." (R. 105.) When ALJ Porter repeated the question whether the therapist's November 5, 2014, treatment note was wrong about compliance and the need for reminders at every session, Plaintiff said "[n]o, she just reminds me to take them consistently. There have been one or two episodes where I haven't . . . but she does remind me." (R. 106.) When ALJ Porter asked specifically whether the therapist's statement was "a true statement or a false statement," Plaintiff responded "that's a false statement. I am taking them consistently." (*Id.*)

Plaintiff explained that she took care of her nine-year-old daughter without help except for academics and her daughter went to a school program for that. (R. 92-93.) She also testified that she did not go to teacher meetings in person but did them by phone. (R. 93.)

ALJ Porter questioned Plaintiff about substance abuse and Plaintiff explained that she had used drugs in the early 1980's but stopped when she got pregnant and never went back, estimating that to have been "about 20 years ago." (R. 93-95.) Plaintiff added that she "had some incidences with alcohol" since she stopped using drugs, stating that she occasionally drank but knew that was not good for her. (R. 94.) When the ALJ further questioned her about

10

drinking, Plaintiff estimated that she drank about once every three months when she would share "a six pack with a friend" but she added she did not drink alcohol often because of its negative effect on her. (R. 94-95.) She also said the last time she drank was "around Christmas" of 2014. (*Id.*) Regarding her statement that she had consumed alcohol around Christmas of 2014 (R. 94-95, 104), the ALJ cited a January 7, 2015, progress note that Plaintiff was "self-medicating with liquor that friends brought over and her pills" as evidence that she was self-medicating with liquor after the Christmas incident Plaintiff had described. (R. 104 (citing Ex. 12F at 12 [R. 517]).) Plaintiff reiterated that it was only the Christmas episode she had spoken about. (R. 104.)

Plaintiff's attorney questioned her about physical symptoms related to anxiety and panic attacks. (R. 96-97.) She described the frustration and heat flashes as well as the feeling of having a heart attack when she went into a full-blown panic episode. (R. 97.) Plaintiff said those episodes lasted about fifteen to twenty minutes and had been occurring five times a day but had decreased to two a day. (R. 97.) She added that the cause could be something as simple as doing the dishes or watching TV. (R. 98.) Regarding watching TV, Plaintiff said obsessive thoughts made it difficult to follow a program so she just had it on for background

11

noise.  (R. 98-99.)

When asked if she had anyone come visit her, Plaintiff said
her sons did as well as a case manager (the first one in June 2013)
and a psychiatric nurse who started in July 2014.  (R. 101-02.)
Plaintiff explained that the case manager came once a week and
helped her with paperwork, reminded her about appointments, and
took her to appointments (including the ALJ hearing).  (*Id.*)  The
psychiatric nurse also came once a week to check her overall health
and medications.  (R. 102-03.)

ALJ Porter asked the vocational expert ("VE") to consider a
hypothetical individual with Plaintiff's education, training, and
work experience who could lift and carry twenty pounds occasionally
and ten pounds frequently, who would be able to

> sit for eight hours in a typical work day,
> stand for five hours . . . walk for five
> hours.  This person should be afforded the
> option to change positions . . . every two
> hours.  This person would be limited to
> occasional reaching with the right and left
> extremity, frequent handling, fingering,
> feeling with the right hand, both hands,
> pushing and pulling is going to be only
> occasionally, postural maneuvers should only
> be occasionally. . . . Person should avoid
> exposure to unprotected heights, concentrated
> exposure to extreme cold, extreme heat, or
> vibrations.  The person is limited to simple
> routine and repetitive tasks that are not
> fast-paced, only simple work decisions,
> incidental collaboration with coworkers and

12

> the public, collaborate with a supervisor 30
> minutes per work day. By collaboration I
> mean actively working together not simply
> being in proximity to others.

(R. 108-09.) The VE identified several exemplary positions such an individual could perform and testified that these positions were available in significant numbers in the national econcomy. (R. 109.)

Plaintiff's attorney questioned the VE about the limitations identified in a medical source statement. (R. 110.) He asked

> [w]ith marked being less than occasional
> ability to perform activities of
> understanding, remembering, and carrying out
> short simple instructions, ability to make
> judgments on simple work-related decisions,
> interacting appropriately with supervisors,
> coworkers, responding appropriately to work
> pressures and to changes would there be
> competitive work available for the
> hypothetical claimant?

(R. 110.) The VE answered there would not be. (*Id.*)

At the close of the hearing, Plaintiff's attorney asked the ALJ to take into consideration that Plaintiff had a case manager and mobile psychiatric nurse in addition to psychiatric care and therapy, averring that the additional personnel showed the difficulty Plaintiff had in functioning and focusing. (R. 112.) ALJ Porter indicated that he would take those facts into consideration. (R. 112-13.) He then stated

13

> but what is not helpful is that we have
> inconsistent statements by her also that go
> to the credibility of her statements. She
> told me she's been consistently taking her
> medication since the therapist, and she told
> me she hasn't consumed alcohol since
> Christmas but there seems to be evidence that
> conflicts with that. And her theory is that
> her therapist is making misrepresentations.

(R. 113.) Plaintiff then stated "[t]hat's not what I said." However, ALJ Porter continued with his statement that he found it unlikely that a therapist would make a "misrepresentation about important things necessary to her treatment." (R. 113.) He closed with saying he had to weigh all the evidence and that's all he needed for the day. (*Id.*)

## C. ALJ Decision

In his April 24, 2015, Decision, ALJ Porter found the following impairments were severe either individually or in combination: myalgia and myositis; osteoarthritis of the hands, lumbago, bilateral foot pain, bipolar disorder, mixed type; postraumatic stress disorder; panic disorder with agoraphobia; and attention deficit hyperactivity disorder. (R. 45.) He concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.*)

ALJ Porter then assessed that Plaintiff had the RFC

> to lift and carry 20 pounds occasionally and

14

10 pounds frequently and she is able to sit 8 hours in a typical workday, stand for five hours and walk for 5 hours in the workday. However, she should be afforded the opportunity to change positions at a maximum frequency of every two hours. She would be limited to occasional reaching with the right and left extremities, frequent handling, fingering and feeling with both hands and pushing/pulling with both hands occasionally. She can perform all postural maneuvers occasionally. She should avoid exposure to unprotected heights, and avoid concentrated exposure to extreme cold, heat and vibrations. She is limited to simple, routine, repetitive tasks that are not fast-paced; only simple work decisions; and incidental collaboration with co-workers, and the public. She can collaborate with a supervisor 30 minutes of the workday. Collaboration is defined as actively working together not being in close proximity.

(R. 47.) With this RFC, ALJ Porter determined Plaintiff was able to perform jobs that existed in significant numbers in the national economy. (R. 59.) He therefore concluded Plaintiff had not been under a disability from January 1, 1992, through the date of the decision. (R. 60.)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[2] It is necessary for the

---

[2] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for

Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other

---

a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

evidence in the case record. 20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process. *Id.*

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step five of the sequential evaluation process when the ALJ found that jobs existed in significant numbers in the national economy which Plaintiff could perform. (R. 59.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see*

17

*also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion. *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the ALJ to analyze all probative evidence and set out the reasons for his decision. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000) (citations omitted). If he has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence

18

approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .""). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary,

in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where a claimed error would not affect the outcome of a case, remand is not required. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Finally, an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion

As set out above, Plaintiff asserts the Acting Commissioner's determination should be reversed or remanded for the following reasons: 1) the ALJ erred in rejecting the opinions of the treating psychiatrist and treating physician; 2) the ALJ erred in assigning little weight to the assessment of the consultative psychologist; and 3) the ALJ did not present a hypothetical question containing all of Plaintiff's credibly established limitations. (Doc. 13 at 3.) The Court will consider Plaintiff's first two objections together as they both have to do with the weight attributed mental health opinions of record.

### A. *Mental Health Opinions*

Plaintiff asserts ALJ Porter discounted the opinions of Dr. Moola and Dr. Endy for erroneous reasons and also incorrectly

assessed the opinion of Dr. Schneider, the consulting examining psychologist. (Doc. 13 at 4-11.) Defendant responds that the ALJ properly evaluated the medical evidence of record. (Doc. 14 at 8-15.) The Court concludes this matter must be remanded for further consideration of the opinions of Drs. Moola, Endy, and Schneider.

Under applicable regulations and the law of the Third Circuit, a treating medical source's opinions are generally entitled to controlling weight, or at least substantial weight.[3] *See, e.g., Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001). Sometimes called the "treating physician rule," the principle is codified at 20 C.F.R. 416.927(c)(2), and is widely accepted in the Third Circuit. *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993); *see also Dorf v. Brown*, 794 F.2d 896 (3d Cir. 1986). The regulation addresses the weight to be given a treating source's opinion: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by

---

[3]    A new regulation regarding weight attributed to a treating source affects cases filed after March 27, 2017. For claims filed after March 27, 2017, 20 C.F.R. § 416.920c eliminates the treating source rule. In doing so, the Agency recognized that courts reviewing claims have "focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our decision." 82 FR 5844-01, 2017 WL 168819, *at 5853 (Jan. 18, 2017). This claim, filed on October 5, 2012 (Doc. 1), is not affected by the new regulation and is to be analyzed under the regulatory scheme cited in the text.

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case, we will give it controlling weight." 20 C.F.R. § 416.927(c)(2).[4] "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the

---

[4] 20 C.F.R. § 416.927(c)(2) states in relevant part:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citations omitted); *see also Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 355 (3d Cir. 2008). In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988)).

Section 416.927 also provides that every medical opinion received will be evaluated regardless of the source. 20 C.F.R. § 416.927(c). Further, more weight will generally be given the medical opinion of a medical source who has examined the claimant than a source who has not. 20 C.F.R. § 416.927(c)(1).

For a claimant who has a mental impairment like "an affective or personality disorder marked by anxiety, the work environment is completely different from home or a mental health clinic." *Morales*, 225 F.3d at 319. *Morales* specifically directs that a treating mental health provider's "opinion that [the claimant's] ability is seriously impaired or nonexistent in every area related

to work shall not be supplanted by an inference gleaned from treatment records reporting on the claimant in an environment absent of the stresses that accompany the work setting." 225 F.3d at 319. *Morales* also explains that "[t]he principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving mental disability." *Id.*

Furthermore, in the case of mental health impairments, courts have recognized that a medical source's opinion which relies on subjective complaints should not necessarily be undermined because psychological and psychiatric conditions by nature are largely diagnosed on the basis of a patient's subjective complaints. *Schickel v. Colvin*, No. 14 C 5763, 2015 WL 8481964, at *11 (N.D. Ill. Dec. 10, 2015); *Hall v. Astrue*, 882 F. Supp. 2d 732, 740 (D. Del. 2012). The importance of recognizing difficulties in ascertaining the severity of a mental health impairment was discussed in *Frye v. Berryhill*, Civ. A. No. 3:16-CV-1482, 2017 WL 4387060 (M.D. Pa. Oct. 3, 2017).

> Mental impairments such as depression and anxiety . . . may manifest in symptoms difficult to quantify through objective medical evidence. A lack of objective medical evidence is by itself insufficient to discredit [a] claimant. SSR 96-7p. As noted by other courts in the Third Circuit,

impairments such as depression and anxiety "while medically determinable, are difficult to substantiate by objective medical evidence." *Volage v. Astrue*, No. 11-CV-4413, 2012 WL 4742373, at *7 (D.N.J. Oct. 1, 2012). "[T]he reports of treating physicians, as well as testimony by the claimant, become even more important in the calculus for making a disability determination" in circumstances involving impairments for which objective medical testing may not demonstrate the existence or severity of an impairment. *See Perl v. Barnhart*, No. 03-4580, 2005 WL 579879, at *3 (E.D. Pa. March 10, 2005) (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2002)). Thus, credibility becomes paramount in making the disability determination without objective medical evidence to refute the findings of a treating source.

*Frye*, 2017 WL 4387060, at *4.

Finally, the importance of subjective complaints related to mental impairments and difficulty quantifying these impairments through objective medical evidence indicates that non-examining source opinions should be carefully considered when an ALJ relies on such an opinion to discount a treating source opinion. Important considerations are the degree to which the non-examining source provides supporting explanations for the opinion and the degree to which the source considers all pertinent evidence, including opinions of treating and examining sources. 20 C.F.R. § 416.927(c)(3); *see also Blum v. Berryhill*, Civ. A. No. 3:16-CV-2281, 2017 WL 2463170, at *7-9 (M.D. Pa. June 7, 2017).

25

1. **Dr. Moola's Opinion**

Plaintiff contends that the two reasons provided by the ALJ for rejecting Dr. Moola's opinion were erroneous: ALJ Porter's consideration of GAF scores was incomplete and did not acknowledge the ongoing relevance of such scores (Doc. 13 at 4-8; Doc. 18 at 4-5); and ALJ Porter's conclusions that "findings were 'essentially normal'" and Plaintiff had no "'significant abnormalities on mental status examination'" are not accurate (Doc. 13 at 7 (quoting R. 55, 58).) Defendant maintains a GAF score is not dispositive of disability and Dr. Moola did not offer an opinion about Plaintiff's ability to work not addressed by the ALJ. (Doc. 14 at 10.)

ALJ Porter did not provide a detailed analysis of Dr. Moola's August 6, 2014, psychiatric evaluation but discussed Dr. Moola's assessed GAF score of 45. (R. 58.) The ALJ noted that the score reflected "serious symptoms or any serious impairment in social or occupation functioning" but, because the most recent edition of the DSM had abandoned GAF scores, the use of the scores in determining an individual's RFC was dubious. (R. 58.) ALJ Porter also found that the GAF score was undermined because "the clinical findings during the initial psychiatric evaluation and the subsequent treatment notes do not contain significant abnormalities on mental

status examination." (*Id.*) ALJ Porter does not explain what he means by "significant abnormalities" or discuss the extensive "Relevant Information/History of Present Illness" section of the evaluation or Dr. Moola's own assessment. (*See* R. 58, 489-91.)

As Plaintiff notes, GAF scores were still in use at the time Dr. Moola made his assessment and the finding should not be discounted as irrelevant based only on the fact of the subsequent DSM change. (*See* Doc. 13 at 6-7.) The Court also finds that ALJ Porter's remaining rationale for discounting the GAF score, i.e., that had no "'significant abnormalities on mental status examination'" (R. 58) are not persuasive in that the ALJ's broad reference to four exhibits does not satisfy his obligation to explain the basis for his determination. The ALJ's general citation to exhibits of record is not adequate evidentiary support for his conclusions. *See*, *e.g.*, *Gross v. Comm'r of Soc. Sec.*, 653 F. App'x 116, 121-22 (3d Cir. 2016) (not precedential). This is so particularly in the context of a mental health assessment where the treating specialist assessed a GAF that can be seen as his opinion that Plaintiff's ability in social and/or occupational functioning is seriously impaired. As set out above, *Morales* directs that such a finding should "not be supplanted by an inference gleaned from

treatment records reporting on the claimant in an environment absent of the stresses that accompany the work setting." 225 F.3d at 319. To the extent Dr. Moola may have credited Plaintiff's subjective complaints in assessing the GAF score, the fact that psychological and psychiatric conditions are necessarily and largely diagnosed on the basis of a patient's subjective complaints should have been considered. *See Hall*, 882 F. Supp. 2d at 740. The principle has added significance in this case because Dr. Moola specifically noted that relevant information and the history of Plaintiff's illness were gathered not only from Plaintiff but also from Plaintiff's therapist (who was affiliated with the same facility as Dr. Moola) and from Plaintiff's psychiatric home nurse who accompanied her to the appointment and saw her weekly at home. (R. 102-03, 489.) He assessed a GAF of 45 at the evaluation and a GAF of 45 for the past year, the latter likely informed by information gleaned not only from Plaintiff but also from her therapist and home psychiatric nurse. The collaboration of reporting sources, particularly the participation of the psychiatric home nurse who regularly observed Plaintiff in a non-clinical setting, adds an objective dimension to reports of mood fluctuations, anger behaviors, reports of chronic problems with concentration and attention span, panic attack symptoms, and home

isolation. (*See* R. 489.) Finally, in the Assessment/Formulation section of his evaluation, Dr. Moola said "I see signs of bipolar disorder, panic disorder with agoraphobia, PTSD and ADHD symptoms." (R. 491.)

In sum, the Court concludes ALJ Porter did not consider probative evidence as required by well-established Third Circuit precedent. *Burnett*, 220 F.3d at 119-20; *Cotter*, 642 F.2d at 706-07; *Dobrowolsky*, 606 F.2d at 406. Therefore, the Court cannot conlude ALJ Porter presented substantial evidence to support his rejection of Dr. Moola's assessed GAF score and he did not otherwise adequately explain his consideration of probative evidence contained in Dr. Moola's evaluation. Therefore, this issue must be reconsidered upon remand.

2. **Dr. Endy's Opinion**

Plaintiff criticizes the ALJ's assignment of "minimal evidentiary weight" to Dr. Endy's Medical Source Statement of Ability to Do Work-Related Activities (Mental), pointing to ALJ Porter's rationale that Dr. Endy was not a mental health specialist and Dr. Endy's treatment records did not support her opinion. (Doc. 13 at 8 (citing R. 57-58).) Defendant cites evidence she deems supportive of ALJ Porter's assessment and concludes that he properly discounted Dr. Endy's opinion. (Doc. 14 at 10-13.)

After noting that Dr. Endy was not a mental health specialist, ALJ Porter found it more important that Dr. Endy

> apparently relied quite heavily on the
> subjective report of symptoms and limitations
> provided by the claimant and her self-
> reported medical history, rather than the
> clinical findings of the contemporaneous
> office visit of April 4, 2014 for migraine
> headaches and the overall essentially normal
> psychiatric findings on examination (Exhibits
> 13F and 15F). Further, Dr. Endy stated that
> DAA is not applicable even though the
> claimant has a significant history of drug
> abuse and his own notes document a two week
> binge on alcohol. Dr. Endy's finding of
> debilitating mental limitations (e.g. marked
> impairment in the inability to carry out
> short, simple instructions) is contradicted
> by claimant's admission that she adequately
> cares for her nine year old daughter. Dr.
> Endy's notes never document claimant's
> inability to interact with him or to follow
> his directives regarding her care. Dr.
> Endy's opinion regarding the claimant's
> ability to perform work-related mental
> activities is therefore not well supported,
> inconsistent with the other substantial
> evidence of record, and therefore given
> minimal evidentiary weight under the
> provisions of 20 CFR 416.927(d). The mental
> assessments of the psychological medical
> sources are entitled to greater weight
> because they are more consistent with the
> evidence received at the hearing level
> (Exhibits 2A and 7F).

(R. 57-58.)

ALJ Porter's assessment of Dr. Endy's opinion is problematic for several reasons. First, while Dr. Endy is not a psychiatrist

30

or psychologist, she was Plaintiff's long-term treating primary care provider and she is an acceptable medical source who discussed Plaintiff's mental health problems at office visits and prescribed medication to address mental impairments. *See*, *e.g.*, R. 559-60. Therefore, under applicable regulatory provisions and rulings, *see*, *e.g.*, 20 C.F.R. § 416.927(c), SSR 96-2p, 1996 WL 374188, Dr. Endy's opinion on Plaintiff's mental health should not be discounted in favor of a non-examining consultant who did not view significant portions of the record and whose opinion the ALJ arguably deemed worthy of limited weight (R. 57) and in favor of a consulting examiner's opinion which the ALJ discounted in part based on the examining relationship (R. 58).[5]   Further, as Plaintiff has noted

---

[5]   As a general matter, the Court's review of ALJ Porter's mental opinion assessments is complicated by general statements that seem at odds with specific determinations. Notably, in the paragraph following his summary of the findings of State agency psychological consultant Henry Weeks, Ph.D., ALJ Porter states that SSR 96-6p mandates that the opinions of State agency medical and psychological consultants must be treated as expert opinion evidence from nonexamining sources. (R. 56-57.)  He then states that he "has evaluated and considered these opinions and gives *significant weight* to the assessments made at the initial level." (R. 57 (emphasis added).)  However, in the next paragraph, ALJ Porter states "[t]here is no assessment from a State agency medical consultant.  The mental assessment at the initial level is given *limited weight* as the psychological consultant did not have the opportunity to observe the claimant or the opportunity to consider additional medical evidence (Exhibits 10F-18F) submitted subsequent to the review of the record."  (R. 57 (emphasis added).)  Thus, within three sentences, ALJ Porter assigned both significant weight and limited weight to Dr. Weeks' assessment.  (R. 57.)  As the latter is supported by some rationale, it could be assumed ALJ

and the Court will discuss below, Dr. Endy's opinion was largely corroborated by Dr. Schneider's opinion. (*See* Doc. 13 at 8.)

The ALJ's subjective complaints rationale (R. 57) is not a good reason to discount Dr. Endy's mental health opinion given the distinction between clinical presentation and work place function as well as the importance of subjective complaints recognized in this circuit. *See Morales*, 225 F.3d at 319; *see also Hall*, 882 F. Supp. 2d at 740. The mental health provider corroboration discussed in connection with Dr. Moola's August 2014 opinion also counsels against discounting subjective reports provided by Plaintiff during a similar time period as that considered in Dr. Endy's April 2014 opinion.

With his characterization of the treatment records of the April 4, 2014, office visit contemporaneous with the Medical Source

---

Porter determined that Dr. Weeks' assessment was entitled to limited weight but this assumption would be questionable based on ALJ Porter's statement that Dr. Weeks' assessment is entitled to "greater weight" than that of Dr. Endy whose opinion he assigned "minimal evidentiary weight." (R. 58 (citing Ex. 2A and 7F).) (Exhibit 2A is the Disability Determination Explanation containing Dr. Weeks' assessment (R. 125-28).) With ALJ Porter's previously articulated reluctance to rely on Dr. Weeks' assessment and the Court's inability to discern a meaningful distinction between "limited weight" and "minimal evidentiary weight" as used by the ALJ (R. 57, 58), further consideration of ALJ Porter's hierarchy of opinions is not warranted.

Statement as indicative of "overall essentially normal" psychiatric findings, ALJ Porter does not cite any specific records or further explain his statement. (*See* R. 57.) Importantly, the April 4, 2014, Physical Exam psychiatric findings include Dr. Endy's notation that Plaintiff was anxious, had a depressed mood, and "can't get along with others to work, isolates, doesn't go out of house, son is running house and taking care of bills." (R. 560.)

Discounting the opinion based on Dr. Endy's consideration of drug and alcohol abuse (R. 57) is not appropriate because ALJ Porter derives inferences from the record and Dr. Endy's answer to the alcohol/substance abuse question which are not warranted on their face and thus require further explanation/exploration. ALJ Porter subjectively described Plaintiff's history of "drug abuse" as "significant" and references Dr. Endy's report of a two-week binge on alcohol. (R. 57.) Assuming the ALJ is referring to the November 30, 2011, office visit notes in which Dr. Endy noted that Plaintiff reported a two-week "binge of alcohol" (R. 348), the note and April 2014 Medical Statement response are not facially contradictory given the wording of the question in the Medical Statement and the two-plus years between the 2011 incident and 2014 response. The following question and directive are found on the form: "If the claimant's impairment(s) include alcohol and/or

substance abuse, do these limitations contribute to any of the claimant's limitations as set forth above? If so, please list the specific limitations caused." (R. 589.) In response, Dr. Endy noted "N/A" and "None." (*Id.*) After close to two and one-half years had elapsed without another documented alcohol incident, there is no apparent contradiction in Dr. Endy inferring with his "N/A" response that Plaintiff's impairments did not include alcohol abuse at the time he completed the Medical Source Statement. A similar analysis is appropriate regarding the ALJ's reference to a "significant history of drug abuse" when that history presumably relates to Plaintiff's hearing testimony about use of drugs in the early 1980's and her statement that she had stopped using street drugs "about twenty years ago." (R. 94.) Further, there is no contradiction in opining that periods of drug/alcohol abuse in the past would not "*contribute to* . . . limitations" assessed years later. (R. 589 (emphasis added).) It follows that responding "[n]one" to the request to identify limitations caused is consistent with "N/A." (*See* R. 57.)

Regarding ALJ Porter's finding conflict between Dr. Endy's assessments and Plaintiff's testimony about her ability to care for her daughter (R. 57-58), the Court does not find support for the association. While it is true that Plaintiff said she cares for

34

her nine-year-old daughter without help (R. 92), ALJ Porter's conclusion that this testimony contradicts Dr. Endy's finding of debilitating mental limitations exemplified by marked limitations in the ability to carry out short, simple instructions (R. 57) is not supported by relevant caselaw. Significantly, Plaintiff has diagnosed mental impairments marked by anxiety, and *Morales* directs that, in this situation, "the work environment is completely different from home or a mental health clinic." 225 F.3d at 319. This consideration is particularly relevant given Plaintiff's testimony and corroborating evidence that Plaintiff rarely leaves her home, has teacher meetings by phone, and has help with managing her household both from family (including paying bills and grocery shopping) and with the assistance of a case manager and mobile psychiatric nurse. (*See, e.g.*, R. 88-92, 112, 560, 590.)

Finally, ALJ Porter's reliance on Dr. Endy's lack of documentation concerning Plaintiff's "inability to interact with him or to follow his directives regarding her care" (R. 58) is not persuasive. First, the fact that something has not been documented in a specific manner does not mean it has not occurred. Second, the conclusion does not take into account the clinical environment in which the interaction was taking place. *See Morales*, 225 F.3d at 319. Importantly, if Plaintiff had minimal difficulties

interacting with others and managing her own care, there would be little need for her to have a case manager and mobile psychiatric nurse visit her weekly.

Because the foregoing review shows that the specific reasons proffered by ALJ Porter for finding Dr. Endy's opinion "not well supported" are not substantiated by the record or consistent with relevant authority, the Court cannot conclude that his decision to attribute "minimal evidentiary weight" (R. 58.) to the opinion is supported by substantial evidence. Further, ALJ Porter's statement that the opinion is "inconsistent with the other substantial evidence of record" (*id.*) is unavailing: to the extent this statement relates to his previously proffered reasons, those reasons have been rejected; to the extent the statement relates to other evidence of record, such a broad reference is not sufficiently specific, *Gross*, 653 F. App'x at 121-22. Thus, Dr. Endy's opinion must be reconsidered on remand.

### 3. Dr. Schneider's Opinion

Plaintiff argues ALJ Porter did not provide support for his rejection of Dr. Schneider's opinion. (Doc. 13 at 9-10.) Defendant responds the ALJ identified at least five reasons for assigning no weight to Dr. Schneider's opinion of marked limitations, "namely the normal mental status examinations of

record and Plaintiff's activities of daily living." (Doc. 14 at 14 (citing R. 58-59, 46, 58, 494, 508-11, 606-11, 621).)

Because remand is required for the reasons discussed above, extensive review of this issue is not warranted. However, the Court notes that the threshold problem with Defendant's response is that her citations to the record are not found in ALJ Porter's analysis. (*See* R. 58-59.) The responsibility of a district court on appeal of the ALJ's decision is to review only evidence relied upon by the ALJ because neither the defendant nor the reviewing court can do what the ALJ should have done--neither can provide *post hoc* reasons for supporting an the decision. *Fargnoli*, 247 F.3d at 42; *Dobrowolsky*, 606 F.2d at 406-07. It is the ALJ's responsibility to explicitly provide reasons for his decision and analysis later provided by the defendant cannot make up for the analysis lacking in the ALJ's decision. *Id.* In other words, the ALJ must provide a "justification in the first instance" for a determination on an issue. *Gross*, 653 F. App'x at 120. Here ALJ Porter has not provided support for his conclusory statements discounting Dr. Schneider's opinion regarding marked limitations in Plaintiff's ability to respond appropriately to usual work

situations (R. 58). Therefore, ALJ Porter's decision to give no weight to Dr. Schneider's assessment that claimant had marked limitations in her ability to respond appropriately to usual work situations (R. 58) must be addressed upon remand.[6]

## B. *Hypothetical Questions to the Vocational Expert*

Plaintiff asserts ALJ Porter failed to present all of her credibly established limitations in his hypothetical questions to the VE. (Doc. 13 at 11.) Defendant does not appear to have directly responded to this claimed error. (*See* Doc. 14.) The Court concludes reconsideration of limitations and further discussion of what limitations are credibly established are required on remand.

Plaintiff specifically avers that the ALJ did not include limitations assessed by Drs. Moola, Endy, and Schneider in his hypotheticals in contravention of *Rutherford*, 399 F.3d at 554, and, therefore, the VE's responses did not constitute substantial

---

[6] The need for reconsideration of Dr. Schneider's opinion is bolstered by the fact that ALJ Porter previously found the opinion entitled to greater weight than that of Dr. Endy because it was "more consistent with evidence received at the hearing level" (R. 58 (citing Exhibits 2A and 7F)). (Exhibit 7F is Dr. Schneider's Clinical Psychological Disability Evaluation (R. 472-79).)

evidence that she could work.  (Doc. 13 at 11-12.)

Pursuant to *Rutherford*, an ALJ is not required to submit to the vocational expert or include in the RFC every impairment alleged by a claimant but an ALJ is only entitled to rely on VE testimony if credibly established limitations are included in the hypothetical.  399 F.3d at 553-54 (citations omitted).  The hypothetical posed to the VE must "accurately convey to the vocational expert all of a claimant's *credibly established limitations*."  *Id*. at 554 (citing *Plummer*, 186 F.3d at 431).  Whether a limitation is credibly established is often the crux of the issue when a plaintiff asserts that the ALJ did not include a limitation in a hypothetical to the VE or the RFC does not account for limitations.  The inquiry then becomes whether the ALJ properly discredited the claimed limitation and thus either did not include it in a hypothetical question or did not include it in the RFC.  Case law and regulations[7] address when a limitation is credibly established. *Rutherford*, 399 F.3d at 554.

> Limitations that are medically supported and
> otherwise uncontroverted in the record, but

---

[7] *Rutherford* specifically identifies 20 C.F.R. §§ 416.945, 929(c) and 927) as relevant to the inquiry.  399 F.3d at 554.

that are not included in the hypothetical
question posed to the expert, preclude
reliance on the expert's response (*Burns*, 312
F.3d at 123). Relatedly, the ALJ may not
substitute his or her own expertise to refute
such record evidence (*Plummer*, 186 F.3d at
429). Limitations that are medically
supported but are also contradicted by other
evidence in the record may or may not be
found credible-the ALJ can choose to credit
portions of the existing evidence but "cannot
reject evidence for no reason or for the
wrong reason" (a principle repeated in *Mason
v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.
1993); [20 C.F.R. § 416.]929(c)(4)). Finally,
limitations that are asserted by the claimant
but lack objective medical support may
possibly be considered nonetheless credible.
In that respect the ALJ can reject such
limitation if there is conflicting evidence
in the record, but should not reject a
claimed symptom that is related to an
impairment and is consistent with the medical
record simply because there is no objective
medical evidence to support it. ([20 C.F.R. §
416.](c)(3)).

399 F.3d at 554.

Here the ALJ found some asserted limitations contradicted by

the record. *See supra*. In his step five evaluation, ALJ Porter

specifically noted that he considered limitations contained in Dr.

Endy's opinion and found them "unsupported by the expanded record

and therefore, not incorporated into the residual functional

capacity assessment." (R. 60.) For the reasons discussed in the

40

Court's analysis of the weight assigned Dr. Endy's opinion, the ALJ's conclusory statement at step five does not satisfy the burden of showing that jobs exist in significant numbers in the national economy that Plaintiff can perform. More broadly, based on the Court's conclusion that substantial evidence did not support ALJ Porter's assessments of the medical opinions of Drs. Endy, Moola, and Schneider, his failure to include limitations found in their opinions in his hypotheticals to the VE cannot be deemed supported by substantial evidence. It follows that his reliance on the VE's testimony regarding jobs Plaintiff was able to perform (R. 59-60) is not warranted. Therefore, the ALJ's step five analysis must be reconsidered on remand.

## V. Conclusion

For the reasons discussed above, the Court concludes this matter must be remanded to the Acting Commissioner for further consideration consistent with this opinion. An appropriate Order is filed simultaneously with this Memorandum.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATE: September 4, 2018

42